SAMUEL BARKER, LUTHER PAGE, JARED PALMER, JOSEPH
WILFORD, AND JOHN BLACKSTONE, v. JOHN WILFORD, AD-
MINISTRATOR ON THE ESTATE OF ELNATHAN HUNT.

HUNT brought his action of trespass against the plaintiffs
in error, for assault and battery, and obtained a verdict for
£20 damage, before the Superior Court; August Term, 1784,
on which judgment was rendered.

Pending the suit, Hunt removed into the province of Nova
Scotia, and left the care of his cause to his friends and attor-
neys.    After final judgment, the plaintiffs in error, upon a
representation that Hunt was dead, procured the defendant
in error to take letters of administration, and then brought this
writ of error *de recordo quod coram nobis residet*, alleging
an error in fact, viz.— " That at the time of rendering said
judgment, Hunt, the plaintiff in said suit, was dead, and the
action ought to have been dismissed, there being no person
in life to prosecute it; and the action being for a personal
injury, cannot by law be prosecuted after the death of the
party, by any representative."

The defendant in error, pleaded — That said Hunt was
living at the time of rendering said judgment.

In support of this issue, the plaintiffs in error produced
two depositions.— One was said to be the deposition of Isaac
Hunt, taken before a Mr. Hutchinson, justice of the peace,
in Suffolk county, state of New York, testifying directly to
the fact.— The other was said to be the deposition of one
Smith, also taken in the state of New York.— From a con-
currence of circumstances, there appeared to be such uncer-

tainty, respecting the death of Hunt, that the court rendered
no judgment, but ordered a continuance to this time.

The plaintiffs now suffered a nonsuit.

Mr. Edwards and Mr. Ingersol, for the defendant in error,
suggested to the court — That the defendant had made un-
wearied exertions to search out the truth of the facts alleged
in the writ; and that they were now able to show clearly that
said Hunt was alive at the time of rendering final judgment,
and even at that time:   That the defendant had applied to
the secretary of the state of New York, who certified, that
but one man of the name of Hutchinson was in the com-
mission of the peace, in either Kings county, Queens county,
or Suffolk; and the defendant had procured that gentleman
to be now present in court, who was ready to testify, that
at the time the deposition, said to be made by Isaac Hunt,
was taken before him, two men (both strangers) came to
him; one of them called himself Barker, and pretended to be
a plaintiff in the present suit; the other he said was Isaac
Hunt, whom he had accidentally found at that place, and
desired that his testimony might be taken, which was accord-
ingly done, and they both went off together:— That the wit-
ness who testified by the name of Isaac Hunt, by Mr. Hutchin-
son's description, must have been Joseph Wilford, one of the
plaintiffs in error:   That Wilford went off immediately, upon
the arrival of Mr. Hutchinson; so that he could not obtain
sight of him.

The defendant's counsel suggested further — That they
were possessed of affidavits (which had been procured at great
expense) which prove that Barker, and the witness who testi-

fied by the name of Isaac Hunt, landed on Long Island, from a boat, some miles from Mr. Hutchinson's, and inquired for a justice of the peace; they procured a guide, and went to Mr. Hutchinson, where one of them gave the deposition; they then returned, and lodged all night near where they landed. During this time, one of them was called by the name of Barker, and the other was not mentioned by any name, until they had left the house in the morning, and returned to their boat; a boy was then present, and heard Barker frequently call his companion by the name of Wilford.

That the defendant also had affidavits from two men, being the only persons of the name of Isaac Hunt in those three counties, who testify that neither of them ever deposed before Mr. Hutchinson, or any other authority, concerning this case: Also, that the defendant had incurred very considerable expense in procuring depositions, to show the fraud practiced by the plaintiffs, to procure the deposition from Smith.

The counsel for the defendant, then moved the court, to allow and tax in the bill of cost, the real expense which had arisen in searching out this matter:—They urged, that the law does not absolutely determine what sum shall be allowed for a deposition, though the ordinary course of the court has been to tax four shillings for a deposition taken within the state, and six shillings for one taken out; yet that cannot be considered to be a compensation for the extraordinary expense attending the taking the depositions in this case; it being left to the discretion of the court what sum shall be taxed, they supposed the court would be governed by the justice of the case, and under the peculiar circumstances of this case, would allow the defendant to recover the whole cost he had sustained.

Mr. Adams and Mr. Hillhouse, for the plaintiffs, contended — That if the plaintiffs had been guilty in the manner stated, they were subject to an action, in which the whole damage sustained would be recovered: That it cannot in this way be taxed in a bill of cost; for it would be imputing a crime, and inflicting a punishment, without giving an opportunity to defend, which the law does in no instance allow.

The COURT said — The defendant might have his remedy by action; therefore, refused to tax the cost beyond the ordinary rule.

It was then moved — That an attachment might issue, against Barker and Joseph Wilford, who had in their possession the depositions of Hunt and Smith, which had been exhibited, and become part of the files of court.

By the COURT. The regular procedure is a rule for those persons to bring in the files within a limited time, and in case of neglect, a process to issue for contempt.

A rule of court was accordingly made, and an official copy left in service with Barker and Wilford.